THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALIEN PROCESSING, LLC d/b/a C1D1 LABS, | |
| Plaintiff, | Civil Action No.: 2:26-cv-12352 |
| v. | Jury Trial Demanded |
| PYTHON EXTRACTION SYSTEMS, LLC d/b/a MACH TECHNOLOGIES, LLC | |
| Defendant. | |

## COMPLAINT

Plaintiff Alien Processing, LLC d/b/a C1D1 Labs ("**Plaintiff**" or "**C1D1**"), by its attorneys, for its Complaint against Python Extraction Systems, LLC d/b/a MACH Technologies, LLC ("**Defendant**" or "**Mach**"), alleges as follows:

## NATURE OF THIS ACTION

1. This is a civil action by C1D1 arising out of Mach's patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

2. C1D1 owns U.S. Patent No. 10,232,286, entitled "Closed oil extraction booth with integrated ventilation system" ("**the '286 Patent**"), which covers its innovative modular extraction booth.

3. Mach sells extraction enclosure systems, which include extraction enclosures EE-1 Series and EE-2 Series and its EES Series extraction systems incorporated therein, that infringe at least one claim of the '286 Patent.

1

4.     Mach's willful and continuing patent infringement should be enjoined permanently to curb the harm to C1D1's market share and resulting price erosion. C1D1 has been, and continues to be, irreparably damaged as a result of Defendant's willful actions and seeks injunctive and monetary relief.

## PARTIES

5.     C1D1 is a corporation organized and existing under the laws of the State of Nevada with a principal place of business at 3320 Research Way, Unit 110, Carson City, NV 89706.

6.     On information and belief, Mach is a Michigan company with a principal place of business at 2610 Bond St., Rochester Hills, MI 48309.

7.     Additionally, Mach's website provides it designs, fabricates, assembles, and tests its systems in its Michigan facility at 2610 Bond St., Rochester Hills, MI 48309. *See About MACH Technologies*, MACH TECHS., https://machtechnologies.com/about-mach-technologies/ (last visited Nov. 19, 2025).

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over C1D1's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

9.     This Court has personal jurisdiction over Mach because it or its employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

10.     This Court has personal jurisdiction over Mach because, on information and belief, the acts complained of herein occurred in Michigan.

11.     Similarly, the exercise of personal jurisdiction over Mach comports with the due process requirements of the United States Constitution because:

2

(a)   Defendant has purposefully established "minimum contacts" with the State of Michigan and this District;

(b)   Plaintiff's claim arises from or relates to Defendant's contacts with the State of Michigan; and

(c)   the exercise of personal jurisdiction over Mach will not offend the traditional notions of fair play and substantial justice.

12.   Therefore, this Court has specific jurisdiction over Mach.

13.   Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because a substantial portion of the cause of action arose in this District and Mach is subject to personal jurisdiction in this District.

## BACKGROUND

14.   C1D1 is a leading provider of innovative extraction solutions made in the United States of America. C1D1 sells the C1D1 modular extraction booth, which is designed to meet the highest safety and efficiency standards in the industry. Each C1D1 Extraction Booth comes with all the Class 1 Division 1 electronics such as lighting, gas sensors, alarms, horns, exit signs and e-stop, as well as the explosion proof intake and exhaust fans. C1D1 extraction booths work for both hydrocarbon or alcohol extraction and provide the required interlocks by NFPA 1.

15.   C1D1 owns U.S. Patent No. 10,232,286, entitled "Closed oil extraction booth with integrated ventilation system", which covers its innovative modular extraction booth.

16.   C1D1's website includes a virtual patent marking page identifying the '286 Patent as covering its C1D1 modular extraction booths: *Patents*, C1D1 LABS, https://c1d1labs.org/patents/ (last visited Nov. 18, 2025).

A.      **The '286 Patent**

17.     On March 19, 2019, the United States Patent and Trademark Office ("**USPTO**") duly and lawfully issued U.S. Patent No. 10,232,286. A true and correct copy of the '286 Patent is attached hereto as **Exhibit A**. The '286 Patent was assigned to C1D1 on January 4, 2024, and C1D1 possesses the exclusive right of recovery for any past, present, or future infringements of the '286 Patent, including equitable relief and damages.

18.     The '286 Patent discloses and claims a modular extraction booth designed to provide a safe and explosion-proof environment for solvent-based oil extraction.

19.     The specification describes a booth assembled from prefabricated wall and ceiling panels to create an airtight interior workspace and includes a ventilation system that draws filtered air into the booth and exhausts hazardous vapors out through ductwork powered by an exhaust blower. To minimize explosion risk, electrical components and equipment are located outside the booth, with ports allowing necessary piping to enter, thereby reducing the need for costly explosion-proof devices inside the booth.

20.     The patent further describes a gas monitoring and control system that automatically adjusts ventilation speed in response to detected solvent vapors. A controller receives signals from gas sensors within the booth and regulates the inlet and exhaust blowers accordingly: operating at a base level under safe conditions and switching to a higher airflow rate when gas concentrations approach hazardous levels. The system may also trigger alarms, warning lights, and automatic solvent shut off when dangerous conditions are detected. These safety features ensure compliance with hazardous-environment standards while providing a cost-effective, portable, and modular solution for oil extraction operations.

21.     Through this combination of modular construction, integrated ventilation, externalized electrical equipment, and automated safety controls, the '286 Patent provides a

practical and compliant solution for performing plant oil extraction using flammable solvents. The patented technology directly addresses the hazards of explosive vapors and toxic exposure, while offering a safer, more economical alternative to traditional explosion-rated facilities.

### B.       Defendant's Unlawful Conduct

22.       On information and belief, since at least March 24, 2022, Mach has advertised and sold its extraction enclosure system that includes either extraction enclosure EE-1 Series or EE-2 Series and its EES Series extraction system incorporated therein (together, the "**Accused Device**").

23.       Mach's website describes extraction enclosures EE-1 Series and EE-2 Series as "modular, compliant enclosures for safe botanical processing environments." *See Shop Botanical & Biomass Extraction Equipment*, MACH TECHS., https://machtechnologies.com/shop-equipment/ (last visited Nov. 19, 2025). The EE-1 Series is "engineered to create a fully compliant Class 1 Division 1 environment, ideal for botanical extraction systems utilizing hydrocarbon solvents such as butane or propane." *EE-1 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-1-series/ (last visited Nov. 19, 2025). Similarly, the EE-2 Series "provides a safe and compliant Class 1 Division 2 enclosure tailored for ethanol-based botanical and biomass extraction." *EE-2 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-2-series/ (last visited Nov. 19, 2025).

24.       Mach's website describes the EES Series as "a complete, PLC controlled, automated cold ethanol extraction system which includes continuous ethanol chilling and pumping, extraction, integrated recirculation, particle filtration, solvent recovery with automated discharge of the recovered ethanol and concentrated oil, and decarboxylation." *EES Series*, MACH TECHS., https://machtechnologies.com/ees-series/ (last visited Nov. 19, 2025).

25. On information and belief, the Accused Device implements the same or substantially the same technology as the '286 Patent.

26. On information and belief, the Accused Device includes or performs each and every limitation of at least one claim of the '286 Patent, either literally or under the doctrine of equivalents. By making, using, offering to sell, selling, and/or importing into the United States the Accused Device, Mach has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '286 Patent under 35 U.S.C. § 271(a).

27. Specifically, the images below are representative of Defendant's infringing conduct:



*See EES Series*, MACH TECHS., https://machtechnologies.com/ees-series/ (last visited Nov. 19, 2025).





*See Extraction Enclosures (Modular & Containerized)*, MACH TECHS., https://web.archive.org/web/20220816102804/https://www.machtechnologies.com/extraction-enclosures-modular-containerized/ (last visited Nov. 19, 2025).

C.        **Defendant's Knowledge and Willful Infringement**

28.        On April 18, 2024, C1D1 sent Defendant a written notice letter demanding that Defendant "immediately cease and desist from all further distribution, sale, advertising, [and] marketing (including online listings)" of its accused Extraction Booths that infringe C1D1's patented technology. The letter expressly identified U.S. Patent No. 10,232,286 and asserted that Defendant's unauthorized sales of its extraction booths constitute infringement of that patent.

29.        On April 24, 2024, Defendant responded in writing acknowledging receipt of Plaintiff's April 18, 2024 notice letter and stating that it had forwarded the notice letter to Defendant's legal counsel and would respond.

30.        Accordingly, no later than April 24, 2024, Defendant had actual knowledge of the '286 Patent and actual notice of C1D1's allegation that Defendant's Extraction Booths infringe the '286 Patent.

31.        Despite receiving C1D1's written notice and despite having a reasonable opportunity to investigate C1D1's infringement allegations, including through its intellectual property counsel copied on the April 24, 2024 response, Defendant did not provide Plaintiff with any substantive non-infringement, invalidity, or other response to C1D1's notice letter.

32.        Instead, on information and belief, Defendant continued and continues to commercially exploit the accused Extraction Booths, including by making, using, offering for sale, selling, marketing, distributing, supporting, and/or promoting the accused Extraction Booths.

33.        On information and belief, Defendant's continued conduct after receiving C1D1's April 18, 2024 notice letter and acknowledging receipt on April 24, 2024 occurred despite a known risk that its activities infringed the '286 Patent, or at minimum a risk that was so obvious that it should have been known. Defendant's conduct therefore constitutes deliberate and intentional infringement.

34.     In addition, at least as of service of this Complaint, Defendant has actual knowledge of the '286 Patent and C1D1's infringement allegations, including the Accused Device and the infringement contentions set forth herein.

35.     Any making, using, offering to sell, selling, importing, marketing, distribution, support, or promotion of the Accused Device after service of this Complaint is undertaken with actual knowledge of the '286 Patent and Plaintiff's infringement allegations and constitutes deliberate and intentional infringement.

36.     Defendant's infringement of the '286 Patent has been and continues to be willful, including at least Defendant's infringement after receiving C1D1's April 18, 2024 written notice, after acknowledging receipt of that notice on April 24, 2024, and/or after service of this Complaint.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,232,286

37.     C1D1 repeats and re-alleges paragraphs 1–36 as if fully set forth herein.

38.     The '286 Patent is directed towards an oil extraction booth. Exemplary Claim 1 of the '286 Patent recites:

An oil extraction booth, comprising:

a plurality of pre-fabricated wall panels;

a plurality of pre-fabricated ceiling panels;

a door;

a ventilation system configured to remove air from the booth, comprising:

an air intake configured to pass filtered air into the booth;

a vertical exhaust duct secured to a wall panel and having an open upper

end at or above the ceiling panels and a lower end proximate to a

floor;

9

an exhaust vent in the lower end of the exhaust duct; and

an exhaust fan coupled to the upper end of the exhaust duct external to the

booth above the ceiling panels;

ports in one or more wall panels through which piping from equipment located

outside the booth passes;

an electrical panel secured to the outside of a wall panel configured to control the

equipment located outside the booth; and

a monitoring system, comprising:

at least one sensor sensitive to the presence of one or more gases or liquids

within the booth; and

a monitor to which the at least one sensor is coupled and programmed to

provide an alarm when the concentration of the one or more gases

or liquids exceeds a first predetermined level.

39. The Accused Device is "[a]n oil extraction booth." The Accused Device is booth system designed for laboratory use and implements botanical extraction, particularly to isolate "ethanol and concentrated oil." *See EES Series*, MACH TECHS., https://machtechnologies.com/ees-series/ (last visited Nov. 19, 2025).

40. The Accused Device comprises "a plurality of pre-fabricated wall panels," as shown below in the images from Mach's website:





*See   Extraction   Enclosures   (Modular   &   Containerized)*,   MACH   TECHS.,
https://web.archive.org/web/20220816102804/https://www.machtechnologies.com/extraction-
enclosures-modular-containerized/ (last visited Nov. 19, 2025).

41.     The Accused Device comprises "a plurality of pre-fabricated ceiling panels," as shown below in the images from Mach's website:





*See id.*

42.      The Accused Device comprises "a door," as shown in the images below taken from Mach's website:





*See id.*

13

43.     The Accused Device comprises "a ventilation system configured to remove air from the booth." For example, Mach's website describes the "optimized air flow and ventilation" of the Accused Device as including "internal air plenums and blowers [that] maintain safe working conditions and proper fume evacuation." *See EE-1 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-1-series/ (last visited Nov. 19, 2025); *see also EE-2 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-2-series/ (last visited Nov. 19, 2025). Accordingly, the following images from Mach's website depict part of the ventilation system above the ceiling panels of the Accused Device:



14



*See Extraction Enclosures (Modular & Containerized)*, MACH TECHS., https://web.archive.org/web/20220816102804/https://www.machtechnologies.com/extraction-enclosures-modular-containerized/ (last visited Nov. 19, 2025).

44. The Accused Device comprises "an air intake configured to pass filtered air into the booth." The '286 Patent describes the "air intake" as a ventilation unit on the topside of the booth coupled to ductwork to blow fresh air into the booth such that the air intake passes filtered air into the booth. *See* '286 Patent, at 4:62–67; 5:1–2. Similarly, Mach's website depicts a ventilation unit on the topside of the extraction enclosure system to pass filtered air into the booth:





*See id.*

45.     On information and belief, the ventilation system of the Accused Device comprises "a vertical exhaust duct secured to a wall panel and having an open upper end at or above the

ceiling panels and a lower end proximate to a floor." Because Mach's website is stamped with PSI approval and the Accused Device is advertised as safe and compliant with C1D1 and C1D2 safety standards, an exhaust duct would be included to "maintain safe working conditions and proper fume evacuation." *See EE-1 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-1-series/ (last visited Nov. 19, 2025); *see also EE-2 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-2-series/ (last visited Nov. 19, 2025). Particularly, Mach's website advertises ventilation systems as including internal air plenums and blowers, which are known in the art to require connection via an exhaust duct in order to comply with safety standards. Further, since the '286 Patent issued, it has become well known in the art to place the lower end of an exhaust duct proximate to the floor due to the density of gaseous materials being removed from the room being higher than that of ambient air.

46. On information and belief, the ventilation system of the Accused Device comprises "an exhaust vent in the lower end of the exhaust duct." As discussed above, the Accused Device includes an exhaust duct as part of its complaint ventilation system. An exhaust vent would be included in the exhaust duct to satisfy C1D1 and C2D2 safety standards.

47. On information and belief, the Accused Device comprises "an exhaust fan coupled to the upper end of the exhaust duct external to the booth above the ceiling panels." For example, Mach's website provides the ventilation system of the Accused Device includes "blowers" which function as exhaust fans. Furthermore, as depicted in the following illustrations, these blowers are positioned external to the Accused Device above the ceiling panels:

17





*See     Extraction     Enclosures     (Modular     &     Containerized)*,     MACH     TECHS.,
https://web.archive.org/web/20220816102804/https://www.machtechnologies.com/extraction-enclosures-modular-containerized/ (last visited Nov. 19, 2025).

48. The Accused Device comprises "ports in one or more wall panels through which piping from equipment located outside the booth passes," as depicted in the image provided on Mach's website:



*See id.*

49. The Accused Device comprises "an electrical panel secured to the outside of a wall panel configured to control the equipment located outside the booth," as shown in the image below:



*See id.* For example, Mach's website describes "each unit comes fully equipped with ethanol-calibrated LEL sensors, airflow management systems, Division 2-rated electrical components, and a UL508A-certified control panel." *See EE-2 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-2-series/ (last visited Nov. 19, 2025).

50.     The Accused Device comprises "a monitoring system" that includes "at least one sensor sensitive to the presence of one or more gases or liquids within the booth." For example, the Accused Device includes either at least one hydrocarbon-calibrated LEL sensor or ethanol-calibrated LEL sensor that measures a particular vapor concentration as a percentage of that vapor's lower explosive limit. *See id.*; *see also EE-1 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-1-series/ (last visited Nov. 19, 2025).

51.     The Accused Device also comprises "a monitor to which the at least one sensor is

coupled and programmed to provide an alarm when the concentration of the one or more gases or liquids exceeds a first predetermined level." As explained in paragraph 50, the Accused Device includes at least one LEL sensor calibrated for one or more explosive gases. Accordingly, Mach's website describes the Accused Devise as including integrated LEL solvent detections such that "solvent-specific sensors monitor air quality and trigger alerts to ensure operator safety." *See e.g.*, *EE-1 Series*, MACH TECHS., https://machtechnologies.com/equipment/extraction-enclosures/ee-1-series/ (last visited Nov. 19, 2025).

52.     Mach's direct infringement of the '286 Patent has been, and continues to be, willful. On information and belief, Defendant has been aware of the '286 Patent before the filing of this Complaint and has infringed the '286 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. For example, Plaintiff provided Defendant written notice of the '286 Patent and C1D1's infringement allegations by letter dated April 18, 2024, and Defendant acknowledged receipt of that notice on April 24, 2024 and stated it had forwarded the notice to counsel. Defendant thereafter continued its infringing conduct. In addition, as a direct competitor of C1D1, Mach had constructive knowledge of the '286 Patent via C1D1's virtual patent marking page.

53.     Mach's direct infringement of the '286 Patent has damaged, and continues to damage, C1D1 in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that C1D1 would have made but for Mach's infringing acts as provided by 35 U.S.C. § 284.

54.     C1D1 will suffer irreparable harm unless Mach is enjoined from infringing the '286 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE C1D1 requests entry of judgment against Defendant as follows:

A.     A judgment that Defendant has infringed one or more claims of the '286 Patent in

violation of 35 U.S.C. § 271(a);

B.    An award of damages not less than a reasonable royalty for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendant's infringement, as provided by 35 U.S.C. § 284;

C.    A judgment that Defendant has willfully infringed one or more claims of the '286 Patent;

D.    A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of C1D1's reasonable attorneys' fees;

E.    An order permanently enjoining Defendant, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the '286 Patent;

F.    An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

G.    An award of C1D1's costs and expenses in this action; and

H.    For such other relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

C1D1 hereby demands a trial by jury on all issues so triable.

Dated: July 10, 2026

Respectfully submitted,

*/s/ Ryan D. Levy*

Ryan D. Levy (TN BPR #024568)
Patterson Intellectual Property Law, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile: (615) 242-2221
rdl@iplawgroup.com

*Attorney for Plaintiff Alien Processing, LLC d/b/a
C1D1 Labs*